IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **DERRICK PHIPPS, et al.,** )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>**SHERIFF OF COOK COUNTY, and COOK** )<br>**COUNTY, ILLINOIS,** )<br>)<br>Defendants. )<br>) | No. 07 C 3889 |

## MEMORANDUM OPINION AND ORDER

In this class action suit, paraplegic and partially-paralyzed pre-trial detainees currently and formerly housed at the Cook County Department of Corrections ("CCDC" or "the Prison") allege that the Sheriff of Cook County ("the Sheriff"), and Cook County, Illinois ("the County") (together, "defendants"), have violated, *inter alia*, section 202 of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132. In June 2009, all of the parties filed cross-motions for summary judgment. On November 25, 2009, I issued a memorandum opinion and order denying all of the parties' motions. *Phipps v. Sheriff of Cook County*, No. 07 C 3889, 2009 WL 4146391 (N.D. Ill. Nov. 25, 2009) ("the November 25 opinion" or "the opinion"). The defendants subsequently filed this motion pursuant Rule 59(e) of the Federal Rules of Civil Procedure, seeking reconsideration of the decision. For the reasons explained below, the motion is denied.

I.

As the Seventh Circuit has repeatedly observed, "[m]otions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Caisse Nationale de Credit Agricole v. CBI Industries, Inc.*, 90 F.3d 1264, 1269(7th Cir. 1996) (quotation marks omitted). "Such problems rarely arise and the motion to reconsider should be equally rare." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). "A party seeking to defeat a motion for summary judgment is required to 'wheel out all its artillery to defeat it.'" *Caisse Nationale*, 90 F.3d at 1269 (quoting *Employers Ins. of Wausau v. Bodi-Wachs Aviation Ins. Agency*, 846 F. Supp. 677, 685 (N.D. Ill. 1994)). Accordingly, "[b]elated factual or legal attacks are viewed with great suspicion . . . [and r]econsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Id.*

Here, the defendants' motion for reconsideration contends that the November 25 opinion erred in three ways: (1) by concluding that the record contained sufficient evidence from which a jury could find that the defendants intentionally discriminated against the plaintiffs; (2) by holding that disputed questions of material fact existed as to whether the defendants failed to reasonably

accommodate the plaintiffs' disabilities; and (3) by declining to grant the defendants summary judgment motion with respect to the plaintiffs' claims concerning access to the prison's electronic monitoring and drug rehabilitation programs.

Despite their protestations to the contrary, the defendants' motion consists almost entirely of arguments presented -- and rejected -- in their original summary judgment motions. Their motion to reconsider furnishes no reason for revisiting those arguments here. However, the motion does succeed in raising a small number of novel issues. While none of these ultimately affects the reasoning or result of the November 25 opinion, I briefly address them here in the interest of clarification and completeness.

First, as part of their argument that I erred in declining to grant them summary judgment with respect to the issue of intentional discrimination, the defendants request that the case be certified for interlocutory review. Here, the defendants seize upon the opinion's passing observation that different Circuits have adopted different formulations of the "intentional discrimination" standard in ADA cases. In particular, the opinion noted that while some Courts of Appeals have used a "deliberate indifference" standard, others have employed a "discriminatory animus" standard. The opinion also noted that the Seventh Circuit had yet to address the specific question of the how the notion of intentional

discrimination should be understood for purposes of the ADA. The defendants therefore urge that the case be certified for interlocutory review so that the Seventh Circuit might issue a definitive ruling on the matter.

The defendants' request is denied. "Interlocutory appeal is appropriate when (1) the appeal presents a question of law; (2) it is controlling; (3) it is contestable; (4) its resolution will expedite the resolution of the litigation, and (5) the petition to appeal is filed in the district court within a reasonable amount of time after entry of the opinion sought to be appealed." *Boim v. Quranic Literacy Inst. and Holy Land Foundation For Relief And Development*, 291 F.3d 1000, 1007 (7th Cir. 2002). The defendants have not even come close to showing that these criteria are met in this case. They fail to provide even the most cursory discussion of the deliberate indifference and discriminatory animus standards. Nor do they explain in what sense the issue represents a contestable or controlling issue of law. The defendants make no attempt to assess the relative merits of the different standards. Indeed, the defendants make no attempt even to determine whether, in the ADA context, there is a meaningful distinction between the two standards, or whether the difference between them is merely verbal.

Moreover, this issue was never raised in the parties' briefing on the summary judgment motion, and the defendants offer no

explanation for their failure to raise the issue earlier. Instead, the defendants insisted throughout that deliberate indifference was the applicable standard. The November 2005 opinion simply assumed without deciding that the defendants' standard applied, and concluded that on the defendants' own standard, they were not entitled to summary judgment on the issue of intentional discrimination.[1] *See, e.g.*, *Harris v. Giant Eagle Inc.*, 133 Fed. App'x. 288, 292 n.1 (6th Cir. 2005) (assuming without deciding that plaintiff's federal claim was timely because neither party raised the issue); *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 125 (2d Cir. 2002) (Because both parties assumed that the law of Puerto Rico rather than New York governed, and because neither side identified any pertinent difference between the laws of the two jurisdictions, the court would likewise assume without

---

[1] For their part, the plaintiffs maintained that it was unnecessary to make any showing of intentional discrimination at all. Nor did the plaintiffs attempt to make such a showing. The plaintiffs' failure to sufficiently attend to this issue does not automatically compel entry of summary judgment in the defendants' favor. Even where one party fails entirely to respond to another party's motion for summary judgment, it is incumbent upon the court to determine whether the moving party has met its burden of showing the absence of any issue of triable fact. *See, e.g.*, *Johnson v. Gudmundsson*, 35 F.3d 1104, 1112 (7th Cir. 1994) ("Even if the opposing party completely fails to respond to a summary judgment motion, Rule 56(e) permits judgment for the moving party only if appropriate -- that is, if the motion demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Thus, even where many or all of the material facts are undisputed, the court still must ascertain that judgment is proper as a matter of governing law.") (citations and quotation marks omitted).

deciding that the law of Puerto Rico applied); *Kaiser Foundation Health Plan of Mid-Atlantic States v. Clary & Moore, P.C.*, 123 F.3d 201, 204 (4th Cir. 1997) (because neither party questioned the applicability of Virginia law, the court would assume without deciding that Virginia law applied).

The defendants' second contention -- regarding the defendants' failure to provide the plaintiffs with reasonable accommodations -- was already largely covered in the original summary judgment motion. In the motion to reconsider, the defendants argue with particular vigor that the accommodations were never requested. I disagree. At the very least, the record is unclear on this point. In any event, however, the defendants are wrong in assuming that it was necessary for the plaintiffs to have requested the specific accommodations in question. Strictly speaking, the ADA embodies no such requirement. Rather, where "a disabled individual's need for an accommodation is obvious, the individual's failure to expressly 'request' one is not fatal to the ADA claim." *Robertson v. Las Animas County Sheriff's Dept.*, 500 F.3d 1185, 1197 (10th Cir. 2007); *Kiman v. New Hampshire Dept. of Corrs.*, 451 F.3d 274, 283 (1st Cir. 2006) ("[T]he ADA's reasonable accommodation requirement usually does not apply unless 'triggered by a request.' This is because a person's disability and concomitant need for accommodation are not always known . . . until the person requests an accommodation. However, sometimes the person's need for an

accommodation will be obvious; and in such cases, different rules may apply.") (citations, quotation marks, and brackets omitted). Thus, the plaintiffs' alleged failure to request accommodations from the defendants provides no basis for reconsidering the November 25 opinion's conclusions.

In their final argument for reconsideration, the defendants maintain that the November 25 opinion erred in failing to grant them summary judgment with respect to the claim that certain of the plaintiffs were wrongly excluded from electronic monitoring and drug rehabilitation programs run by the CCDC. The defendants are perhaps justified in pointing out that opinion's discussion of this issue is somewhat truncated. In particular, the opinion addresses only whether the plaintiffs were entitled to summary judgment on the claims regarding these programs. Having denied the plaintiffs' motion on this point, the opinion did not take the additional step of considering the defendants' cross-motion for summary judgment concerning these programs. The omission is ultimately of no moment, however, because the defendants' arguments for summary judgment on this point are without merit.

The claims relating to the prison's electronic monitoring program chiefly involve plaintiffs Phipps and Grant. Against their contention that they were excluded from the program because of their disabilities, the defendants insist that Phipps and Grant were excluded because of their criminal histories. Specifically,

the defendants claim that individuals who have been charged with, or convicted of, certain crimes are barred by prison regulations from participating in the electronic monitoring program. Quite simply, the defendants' position is not borne out by the record.

In support of their argument, the defendants rely almost exclusively on a single exhibit consisting of two memoranda from the Cook County Sheriff's Office. *See* Defs.' Ex. 14. These memos list the various charges and offenses that can result in exclusion from the electronic monitoring program.[2] The defendants first argue that Phipps and Grant were denied access to the program because both had been charged with possession of a controlled substance. However, neither of the memos state that being charged with (or convicted for) possession of a controlled substance will result in exclusion from the program. Rather, they say that "[a]ny

---

[2] The defendants cite only to the exhibit in its entirety and fail to indicate the specific portions of the memos on which they seek to rely. This is especially problematic here, because some of the documents purport to supersede others, and because it is not entirely clear from the documents themselves which charges or offenses the defendants believe are applicable to Phipps and Grant. This constitutes a violation of Local Rule 56.1 and would alone provide sufficient grounds for summarily rejecting the defendants' argument. *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817-18 (7th Cir. 2004) ("[W]here a non-moving party denies a factual allegation by the party moving for summary judgment, that denial must include a specific reference to the affidavit or other part of the record that supports such a denial. Citations to an entire transcript of a deposition or to a lengthy exhibit are not specific and are, accordingly, inappropriate. A court should not be expected to review a lengthy record for facts that a party could have easily identified with greater particularity.").

narcotic charges other than Marijuana involving more than 100 grams disqualify the accused from EM [electronic monitoring]." The defendants do not point to any evidence showing that this proscription applies to Grant. The portion of his deposition cited by the defendants says merely that Grant had been incarcerated for eight months because his son "made some allegations about drugs and guns." Def.'s Ex. 3, Grant Dep. at 8:12-9:8. Neither the drug nor the quantity of the drug in question is specified in the cited portion of the deposition.

The record is also unclear as to whether the exclusion applies to Phipps. Although Phipps had previously been charged with felony drug possession, the charge for which he was incarcerated during the time in question was for probation violation. Defs.' Ex 4, Phipps Dep. at 9:1-10:22. The defendants point to nothing in the memos suggesting that having been charged with drug possession at some prior time would constitute a reason for excluding a prisoner currently incarcerated for a different offense.

Moreover, even assuming that this provision, or some other provision, were applicable to Phipps and Grant, that still would not require that they necessarily be excluded from the electronic monitoring program. Notably, before listing the various reasons for exclusion, certain of the memos state that a "*[a] charge alone within the last 12 months of any of the following offenses* will be sufficient to disqualify an inmate from Electronic Monitoring

unless the charge was dismissed or discharged." Ex. 14 at 4. Significantly, this language does not suggest that an inmate *must be* excluded from the program if his criminal history includes any of the listed charges or offenses; it says only that such a criminal history will be "sufficient" for exclusion. The memo goes on to add that "[i]n each case, the candidate will be judged on an individual basis for his/her acceptance." *Id.* This suggests that admittance to the this program can depend on factors other than prisoners' criminal histories. If so, the question remains open as to precisely why Phipps and Grant were excluded.

As an alternative ground for Grant's exclusion, the defendants note that under the relevant guidelines, "[a]nyone currently charged with Domestic Violence or convicted of Domestic Violence within the last 3 (three) months is not eligible." Defs.' Ex. 14 at 4. The defendants point to Grant's admission in his deposition that he had earlier been convicted for domestic violence. However, Grant's testimony in his deposition also makes clear that he was unable to remember precisely when he had been convicted. The record thus leaves unclear whether Grant's conviction was within three months of the relevant date. As a result, the domestic violence exclusion provides no ground for his exclusion.

As for Phipps's exclusion from the prison's drug rehabilitation program, the only evidence the defendants offer is Phipps's "intake form," which indicates that Phipps's answered in

the negative when asked whether he smoked tobacco, drank alcohol, or used illicit drugs. Defs.' Ex. 18. This single document is hardly sufficient to show the lack of any issue of triable fact concerning the reason for Phipps's exclusion from the program.[3]

Thus, the defendants are not entitled to summary judgment with respect to the plaintiffs' exclusion from the electronic monitoring and drug rehabilitation programs.

## II.    Conclusion

For the reasons explained above, the defendants' motion for reconsideration is denied.


**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: February 19, 2010

---

[3] There seems to be one exception to the foregoing considerations -- namely, plaintiff House -- who apparently did participate in the monitoring program.

-11-