IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Derrick Phipps, et al., | ) | |
| | ) | |
| *Plaintiffs,* | ) | |
| | ) | |
| -*vs*- | ) | No. 07 CV 3889 |
| | ) | |
| Sheriff of Cook County and Cook County, | ) | (Judge Bucklo) |
| | ) | |
| .          *Defendants.* | ) | |

## PLAINTIFFS' MOTION TO RECONSIDER ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

In light of the legal arguments advanced by defendants in their separate "statements of position" filed on April 29 and 30, 2010, plaintiffs move the Court to reconsider its order denying their motion for summary judgment and enter judgment on liability in favor of the plaintiff class. In the alternative, as an intermediate step towards demonstrating the lack of any need for a trial on liability, plaintiffs request that the Court require defendants to submit a summary of the testimony of each witness defendants intend to call at trial.

Grounds for this motion are as follows:

1.      Each defendant has filed a "position paper." These statements repeat legal arguments the Court rejected in its summary judgment rulings; each statement reveals the absence of any disputed questions of fact.

2.    The "position papers" show that defendants are unable to identify any issue of fact concerning defendants' failure to accommodate wheelchair bound detainees at Cermak Infirmary, the "RTU," and Dorms M and N of Division 2.[1]

3.    The following arguments are re-advanced in the Sheriff's "amended position paper" (filed as document 295):

### I.    The Rehabilitation Act

The Sheriff bases his Rehabilitation Act argument (Document 295 at 1-2) on language from a case decided in 1982, before Congress amended the Rehabilitation Act in the Civil Rights Restoration Act of 1987, Pub.L. No. 100-259, 102 Stat. 28. *Doyle v. University of Alabama*, 680 F.2d 1323 (11th Cir. 1982) (Document 291 at 2), is no longer good law; the 1987 amendment made the Rehabilitation Act apply to "organizations that receive federal funds."[2] *Wisconsin Community Services, Inc. v. City of Milwaukee*, 465 F.3d 737, 746 (7th Cir. 2006).

---

[1] Plaintiffs discussed the non-compliant aspects of each of these housing units in their memorandum filed on April 29, 2010 as Document 290.

[2] Plaintiffs recently obtained a summary of federal grants to Cermak Infirmary that have been administered by the Hektoen Institute from January of 2000 to March 2010. This summary, attached as Exhibit 1, leaves little doubt that the Cook County and the Sheriff receive federal funds for the programs and services at the Cook County Jail.

## II.   Title III

The Sheriff makes an argument about Title III of the ADA. (Document 291 at 2-3.) The Court rejected this meritless argument in its summary judgment opinion, holding that Title III has nothing to do with this case. Mem.Op., Nov. 25, 2009 at 29.

## III.   Title II

The Sheriff argues that plaintiffs' complaint is defective because it fails to allege denial of access to "programs or activities." (Document 295 at 3-4.) The Court rejected this argument as "simply incorrect." Mem.Op., Nov. 25, 2009 at 31.

Defendants also argue that plaintiffs fail to allege intentional discrimination. (Document 295 at 4.) The Court considered this argument in its summary judgment opinion, concluding that plaintiffs must show intentional discrimination, Mem.Op., Nov. 25, 2009 at 33, and finding that "the record contains sufficient evidence from which intentional discrimination can be inferred." Mem.Op., Nov. 25, 2009 at 35.

## IV.   Applicability of Title II to the "RTU"

Defendants cite the regulations implementing the ADA for the standard that structures like the RTU, built before enactment of the ADA, must be "readily accessible to and usable by individuals with disabilities." (Document 295 at 4.) Defendants, however, have not identified any witness

or document that can provide evidence that the RTU met this standard, i.e., that it was "readily accessible to and usable by individuals with disabilities."

### V.   PLRA

The Court thoroughly considered all of defendants' arguments about the PLRA in its summary judgment decision. Mem.Op., Nov. 25, 2009 at 5-19. Defendants' position on the PLRA is simply that the Court was wrong in its resolution of the PLRA issues. (Document 295 at 5-9.) Nothing in this bald request for reconsideration warrants a trial.

Defendants add one new argument, claiming that attorneys' fees for claims under the ADA and the Rehabilitation Act are controlled by the section of the PLRA that applies to attorney's fees awarded under 42 U.S.C. §1988. (Document 295 at 9.) The ADA has its own fee shifting provision (42 U.S.C. §12205), as does the Rehabilitation Act (29 U.S.C. § 794a), and §1988 has no application to this case. Moreover, the standards for a fee award will not be at issue at trial and are not material at this stage of the case.

4.   The following arguments are advanced in defendant Cook County's position paper (Document 293):

## I.   The Rehabilitation Act

Cook County advances several legal arguments concerning the applicability of the Rehabilitation Act. (Document 293 at 1-3.) These arguments overlook the 1987 amendments to the Act, but (once the record is expanded to include the indisputable facts about the receipt of federal funds), raise only questions of law.

## II.   The ADA

Cook County also advances a variety of legal arguments concerning the ADA. (Document 293 at 3-7.) The Court thoroughly considered each of these arguments in its summary judgment ruling. Nothing in Cook County's presentation hints at disputed questions of fact to be resolved at trial.

5.      Defendants' submissions show the absence of disputed factual issues to be decided at trial.  Defendants' theory of the case is "the well-known maxim that, 'what I tell you three times is true.'" *Larsen v. Suburban Medical Center at Hoffman Estates, Inc.*, N.D. Ill., No. 98 C 183, Mem.Op. Sept. 23, 1998, 1998 WL 684204 *4 n.5, (attached as Exhibit 2), quoting Lewis Carroll, *The Hunting of the Snark* (1876). The Court has rejected defendants' legal arguments and there is no need for a trial on disputed question of law.

6.      As an intermediate step towards demonstrating the lack of any need for a trial on liability, the Court may wish to follow the procedure

approved by the Seventh Circuit in *MCI Communications Corp. v. American Tel and Tel. Co.*, 708 F.2d 1081, 1171 (7th Cir. 1983), and require defendants to submit a summary of the testimony of each witness they intend to call at trial. Plaintiffs believe that these summaries will make clear beyond peradventure the absence of any disputed questions of fact to resolve at trial.

It is therefore respectfully requested that the Court reconsider its order denying their motion for summary judgment and enter judgment on liability in favor of the plaintiff class. In the alternative, plaintiffs request that the Court require defendants to submit a summary of the testimony of each witness defendants intend to call at trial.

Respectfully submitted,

/s/   Kenneth N. Flaxman
Kenneth N. Flaxman
ARDC 830399
200 S Michigan Ave, Ste 1240
Chicago, Illinois 60604
(312) 427-3200
*an attorney for plaintiff*

**Exhibit 1**

| PI Name | Grant ID | Begin | End | Title | CFDA # | Award | Funding Agency |
|---------|----------|-------|-----|-------|--------|-------|----------------|
| McAuley, James | 02791 | 3/1/2000 | 12/31/2000 | Cermak STD Laboratory Technician | | $30,000.00 | CDPH (Chicago Department Of Public Health) / Feds. |
| McAuley, James | 02586 | 7/1/2000 | 12/31/2000 | CDPH TB CONTROL/CERMAK HEALTH SERVICES | 093.116 | $181,617.00 | CDPH (Chicago Department Of Public Health) |
| McAuley, James | 02745 | 7/1/2000 | 12/31/2000 | TB Control Directly Observed Therapy at Cermak | 093.116 | $35,025.00 | CDPH (Chicago Department Of Public Health) |
| Muzaffar, Shirin | 02507 | 7/1/2000 | 12/31/2000 | CDOH TB CONTROL | 093.116 | $303,931.00 | CDPH (Chicago Department Of Public Health) |
| McAuley, James | 06944 | 1/1/2001 | 12/31/2001 | West Adult Incarcerated/Post Release | 093.915 | $74,260.00 | CDPH (Chicago Department Of Public Health) |
| McAuley, James | 06943 | 1/1/2001 | 12/31/2001 | South Adult Incarcerated/Post Release | 093.915 | $50,632.00 | CDPH (Chicago Department Of Public Health) |
| McAuley, James | 06942 | 1/1/2001 | 12/31/2001 | North Adult Incarcerated/Post Release | 093.915 | $49,507.00 | CDPH (Chicago Department Of Public Health) |
| McAuley, James | 06941 | 1/1/2001 | 12/31/2001 | Citywide Adult Incarcerated/Post Release | 093.915 | $75,011.00 | CDPH (Chicago Department Of Public Health) |
| McAuley, James | 02587 | 1/1/2001 | 12/31/2001 | CDPH TB Control - Cermak | 093.116 | $184,733.00 | CDPH (Chicago Department Of Public Health) |
| McAuley, James | 06945 | 1/1/2001 | 12/31/2002 | Citywide Adult Incarcerated/Post Release | 093.915 | $238,187.00 | CDPH (Chicago Department Of Public Health) |

Plaintiffs' Exhibit 1

**Hektoen Institute**
Cermak grants - January 2003 to March 2010
Case 1:07-cv-03889   Document 291   Filed 04/30/10   Page 9 of 22

| PI Name | Grant ID | Begin | End | Title | CFDA # | Award | Funding Agency |
|---|---|---|---|---|---|---|---|
| Raba, John | 02942 | 9/15/2003 | 9/14/2004 | Monitor Prevalence of STD's & TB Infection | 093.283 | $75,000.00 | Chicago Center for Health Systems Development, Inc |
| Raba, John | 69402 | 1/1/2004 | 12/31/2004 | Cermak HIV Prevention Education Program | 093.915 | $238,187.00 | CDPH (Chicago Department Of Public Health) |
| Shannon, Jay | 02511 | 1/1/2004 | 12/31/2004 | CDPH TB Control-CCH and Cermak | 093.116 | $346,594.00 | CDPH (Chicago Department Of Public Health) |
| Raba, John | 02262 | 1/1/2004 | 12/31/2004 | STD Tracking At Cermak | 093.977 | $50,000.00 | IDPH (IL Department of Public Health) |
| Raba, John | 80021 | 3/1/2004 | 6/30/2005 | Illinois Public Health Corrections & Community Initiative Program - Cermak | 093.941 | $60,600.00 | Chicago Center for Health Systems Development, Inc |
| Murphy-Swallow, MS, Dorothy | 69412 | 1/1/2005 | 12/31/2005 | Cermak  Health Services - Youth HRH Citywide | 093.940 | $77,589.00 | CDPH (Chicago Department Of Public Health) |
| Shannon, Jay | 02512 | 1/1/2005 | 12/31/2005 | CDPH TB Control-CCH and Cermak | 093.116 | $326,940.00 | CDPH (Chicago Department Of Public Health) |
| Raba, John | 02263 | 1/1/2005 | 12/31/2005 | STD Tracking at Cermak | 093.977 | $45,000.00 | IDPH (IL Department of Public Health) |
| Murphy-Swallow, MS, Dorothy | 80022 | 7/1/2005 | 6/30/2006 | Illinois Public Health Corrections & Community Initiative Program - Cermak | 093.941 | $142,000.00 | IDPH (IL Department of Public Health) |
| Murphy-Swallow, MS, Dorothy | 02716 | 10/1/2005 | 6/30/2006 | Comprehensive STD Prevention Systems / Syphilis Elimination Program | | $100,000.00 | CDPH (Chicago Department Of Public Health) |

| PI Name | Grant ID | Begin | End | Title | CFDA # | Award | Funding Agency |
|---------|----------|-------|-----|-------|--------|-------|----------------|
| Raba, John | 02942 | 9/15/2003 | 9/14/2004 | Monitor Prevalence of STD's & TB Infection | 093.283 | $75,000.00 | Chicago Center for Health Systems Development, Inc |
| Raba, John | 69402 | 1/1/2004 | 12/31/2004 | Cermak HIV Prevention Education Program | 093.915 | $238,187.00 | CDPH (Chicago Department Of Public Health) |
| Shannon, Jay | 02511 | 1/1/2004 | 12/31/2004 | CDPH TB Control-CCH and Cermak | 093.116 | $346,594.00 | CDPH (Chicago Department Of Public Health) |
| Raba, John | 02262 | 1/1/2004 | 12/31/2004 | STD Tracking At Cermak | 093.977 | $50,000.00 | IDPH (IL Department of Public Health) |
| Raba, John | 80021 | 3/1/2004 | 6/30/2005 | Illinois Public Health Corrections & Community Initiative Program - Cermak | 093.941 | $60,600.00 | Chicago Center for Health Systems Development, Inc |
| Murphy-Swallow, MS, Dorothy | 69412 | 1/1/2005 | 12/31/2005 | Cermak  Health Services - Youth HRH Citywide | 093.940 | $77,589.00 | CDPH (Chicago Department Of Public Health) |
| Shannon, Jay | 02512 | 1/1/2005 | 12/31/2005 | CDPH TB Control-CCH and Cermak | 093.116 | $326,940.00 | CDPH (Chicago Department Of Public Health) |
| Raba, John | 02263 | 1/1/2005 | 12/31/2005 | STD Tracking at Cermak | 093.977 | $45,000.00 | IDPH (IL Department of Public Health) |
| Murphy-Swallow, MS, Dorothy | 80022 | 7/1/2005 | 6/30/2006 | Illinois Public Health Corrections & Community Initiative Program - Cermak | 093.941 | $142,000.00 | IDPH (IL Department of Public Health) |
| Murphy-Swallow, MS, Dorothy | 02716 | 10/1/2005 | 6/30/2006 | Comprehensive STD Prevention Systems / Syphilis Elimination Program | | $100,000.00 | CDPH (Chicago Department Of Public Health) |

| PI1Name | Grant ID | Begin | End | Title | CFDA # | Award | Funding Agency |
|---|---|---|---|---|---|---|---|
| Murphy-Swallow, MS, Dorothy | 69413 | 1/1/2006 | 12/31/2006 | Cermak  Health Services - Youth HRH Citywide | | $137,589.00 | CDPH (Chicago Department Of Public Health) |
| Shannon, Jay | 02513 | 1/1/2006 | 12/31/2006 | CDPH TB Control-CCH and Cermak | 093.116 | $309,000.00 | CDPH (Chicago Department Of Public Health) |
| Murphy-Swallow, MS, Dorothy | 02264 | 1/1/2006 | 12/31/2006 | STD Tracking at Cermak | 093.977 | $45,000.00 | IDPH (IL Department of Public Health) |
| Murphy-Swallow, MS, Dorothy | 80023 | 7/1/2006 | 6/30/2007 | Illinois Public Health Corrections & Community Initiative Program - Cermak | 093.941 | $142,000.00 | IDPH (IL Department of Public Health) |
| Zawitz, Chad | 69301 | 1/1/2007 | 12/31/2007 | Cermak  SPNS | | $112,500.00 | CDPH (Chicago Department Of Public Health) |
| Murphy-Swallow, MS, Dorothy | 69421 | 1/1/2007 | 12/31/2007 | Cermak AA Females Cluster B | | $62,952.00 | CDPH (Chicago Department Of Public Health) |
| Monti, Catherine | 02514 | 1/1/2007 | 12/31/2007 | CDPH TB Control-CCH and Cermak | 093.116 | $318,064.00 | CDPH (Chicago Department Of Public Health) |
| Murphy-Swallow, MS, Dorothy | 02265 | 1/1/2007 | 12/31/2007 | STD Tracking at Cermak | 093.977 | $42,000.00 | IDPH (IL Department of Public Health) |
| Murphy-Swallow, MS, Dorothy | 60031 | 7/1/2007 | 6/30/2008 | Family Case Manage- Cermak | | $214,500.00 | IDHS (IL Department of Human Services) |
| Murphy-Swallow, MS, Dorothy | 80024 | 7/1/2007 | 6/30/2008 | Illinois Public Health Corrections & Community Initiative Program - Cermak | 093.941 | $142,000.00 | IDPH (IL Department of Public Health) |
| Zawitz, Chad | 69302 | 1/1/2008 | 12/31/2008 | Cermak  SPNS | | $112,500.00 | CDPH (Chicago Department Of Public Health) |

Hektoen Institute
Case 1:07-cv-03889   Document 297   Filed 04/30/10   Page 12 of 22
Cermak grants  January 2000 to March 2010

| PI Name | Grant ID | Begin | End | Title | CFDA # | Award | Funding Agency |
|---|---|---|---|---|---|---|---|
| Murphy-Swallow, MS, Dorothy | 69422 | 1/1/2008 | 12/31/2008 | Cermak AA Females Cluster B | | $100,000.00 | CDPH (Chicago Department Of Public Health) |
| Monti, Catherine | 02518 | 1/1/2008 | 6/30/2008 | CDPH TB Control-CCH and Cermak | 093.116 | $0.00 | CDPH (Chicago Department Of Public Health) |
| Monti, Catherine | 02517 | 1/1/2008 | 6/30/2008 | CDPH TB Control-CCH and Cermak | | $52,631.57 | CDPH (Chicago Department Of Public Health) |
| Cohen, Robert | 02516 | 1/1/2008 | 12/31/2008 | CDPH TB Control-CCH and Cermak | 093.116 | $176,350.00 | CDPH (Chicago Department Of Public Health) |
| Monti, Catherine | 02515 | 1/1/2008 | 6/30/2008 | CDPH TB Control-CCH and Cermak | 093.116 | $69,488.43 | CDPH (Chicago Department Of Public Health) |
| Murphy-Swallow, MS, Dorothy | 60032 | 7/1/2008 | 6/30/2009 | Family Case Manage- Cermak | | $213,878.00 | IDHS (IL Department of Human Services) |
| Murphy-Swallow, MS, Dorothy | 80025 | 7/1/2008 | 6/30/2009 | Illinois Public Health Corrections & Community Initiative Program - Cermak | 093.941 | $153,000.00 | Public Health Institute of Metropolitan Chicago |
| Zawitz, Chad | 69303 | 1/1/2009 | 12/31/2009 | Cermak  SPNS | | $112,500.00 | CDPH (Chicago Department Of Public Health) |
| Clapp, William | 02519 | 1/1/2009 | 6/30/2009 | CDPH TB Control-CCH and Cermak | 093.116 | $58,847.00 | CDPH (Chicago Department Of Public Health) |
| Clapp, William | 02520 | 1/1/2009 | 12/31/2009 | CDPH TB Control-CCH and Cermak | 093.116 | $237,470.00 | CDPH (Chicago Department Of Public Health) |

Plaintiffs' Exhibit 1

| | Begin | End | Title | CFDA # | Award | Funding Agency |
|---|---|---|---|---|---|---|
| Murphy-Swallow, MS, Dorothy | 69423 | 1/1/2009 | 12/31/2009 | Cermak AA Females Cluster B | | $100,000.00 | CDPH (Chicago Department Of Public Health) |
| Murphy-Swallow, MS, Dorothy | 60033 | 7/1/2009 | 6/30/2010 | Family Case Manage- Cermak | | $208,143.00 | IDHS (IL Department of Human Services) |
| Murphy-Swallow, MS, Dorothy | 80026 | 7/1/2009 | 6/30/2010 | Illinois Public Health Corrections & Community Initiative Program - Cermak | 093.941 | $142,000.00 | Public Health Institute of Metropolitan Chicago |
| Zawitz, Chad | 69304 | 1/1/2010 | 12/31/2010 | Cermak  SPNS | | $97,875.00 | CDPH (Chicago Department Of Public Health) |
| Clapp, William | 02552 | 1/1/2010 | 6/30/2010 | CDPH TB Control-CCH and Cermak | 093.116 | $250,000.00 | CDPH (Chicago Department Of Public Health) |
| Clapp, William | 02553 | 1/1/2010 | 6/30/2010 | CDPH TB Control-CCH and Cermak | 093.116 | $28,000.00 | CDPH (Chicago Department Of Public Health) |
| Murphy-Swallow, MS, Dorothy | 69424 | 1/1/2010 | 12/31/2010 | Cermak AA Females Cluster B | | $87,000.00 | CDPH (Chicago Department Of Public Health) |



**Exhibit 2**

Not Reported in F.Supp.2d, 1998 WL 684204 (N.D.Ill.)
**(Cite as: 1998 WL 684204 (N.D.Ill.))**

Only the Westlaw citation is currently available.

United States District Court, N.D. Illinois.
Susan J. LARSEN, Plaintiff,
v.
SUBURBAN MEDICAL CENTER AT HOFFMAN ESTATES, INC. d/b/a COLUMBIA HOFFMAN ESTATES MEDICAL CENTER, et al., Defendants.
**No. 98 C 183.**

Sept. 23, 1998.

MEMORANDUM AND ORDER

MANNING, District Court J.

**\*1** According to plaintiff Susan Larsen, on February 1, 1997 (when she was approximately eight months pregnant) she had two alcoholic drinks with dinner. Larsen was ultimately arrested and transported to defendant Columbia Hoffman Estates Medical Center (the "Medical Center"), where her urine was tested for alcohol. Staff at the Medical Center disclosed Larsen's alcohol level to the officers. Larsen was charged with reckless conduct under 720 ILCS §§ 5/12-5(a) and 5/12-21.6, based on her alleged endangerment of her unborn child due to ingestion of an excessive amount of alcohol. The charges against Larsen were ultimately dismissed.

Larsen filed a six-count complaint against the Bartlett Police Department, Bartlett police officers Pretkelis, Smith, and Theriault, and the Medical Center. Counts I (malicious prosecution), II (illegal search and seizure), and III and IV (unlawful arrest) are directed at the Bartlett Police Department and the three Bartlett police of-

ficers, while Counts V (breach of the physician-patient privilege) and VI (invasion of privacy) are directed at the Medical Center and are within the court's supplemental jurisdiction, 28 U.S.C. § 1367. The Medical Center seeks dismissal of Counts V and VI under Fed.R.Civ.P. 12(b)(6). For the following reasons, the Medical Center's motion to dismiss is granted.

I. Standard on a Rule 12(b)(6) Motion to Dismiss

In ruling on a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the court must assume the truth of all facts alleged in the complaint, construing the allegations liberally and viewing them in the light most favorable to the plaintiff. *See, e.g., McMath v. City of Gary,* 976 F.2d 1026, 1031 (7th Cir.1992); *Gillman v. Burlington N. R.R. Co.,* 878 F.2d 1020, 1022 (7th Cir.1989). Dismissal is properly granted only if it is clear that no set of facts which the plaintiff could prove consistent with the pleadings would entitle the plaintiff to relief. *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Kunik v. Racine County, Wis.,* 946 F.2d 1574, 1579 (7th Cir.1991), *citing Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

The court will accept all well-pled factual allegations in the complaint as true. *Miree v. DeKalb County,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977). In addition, the court will construe the complaint liberally and will view the allegations in the light most favorable to the nonmoving party. *Craigs, Inc. v. General Electric Capital Corp.,* 12 F.3d 686, 688 (7th Cir.1993). However, the court is neither

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1998 WL 684204 (N.D.Ill.)
**(Cite as: 1998 WL 684204 (N.D.Ill.))**

bound by the plaintiff's legal characterization of the facts, nor required to ignore facts set forth in the complaint that undermine the plaintiff's claims. *Scott v. O'Grady,* 975 F.2d 366, 368 (7th Cir.1992), *cert. denied,* 508 U.S. 942, 113 S.Ct. 2421, 124 L.Ed.2d 643 (1993).

## II. Background

The following facts are drawn from the allegations in the complaint. On February 1, 1997, when she was approximately eight months pregnant, Larsen had two alcoholic drinks with dinner. Larsen got into a "small argument" with her husband at approximately 4:00 the following morning. Complaint at ¶ 9. Larsen's husband called 911 and hung up. When the 911 dispatcher called back, Larsen's husband told him that "everything was fine." *Id.* at ¶ 10. Bartlett police officers nevertheless arrived at Larsen's home, searched it, interrogated Larsen and took her into custody. *Id.* at ¶ 11, 13, and 16.

**\*2** The officers subsequently caused paramedics to transport Larsen to the Medical Center, where she submitted a urine sample for alcohol testing. Staff at the Medical Center told the officers that Larsen's urine alcohol level was 268 mg/dl. The officers then transported Larsen to the Bartlett police station and placed her in a cell. Larsen was charged with reckless conduct under 720 ILCS 5/12-5(a), based on her alleged endangerment of her unborn child due to ingestion of an excessive amount of alcohol.[FN1] She was released several hours later.

> FN1. 720 ILCS 5/12-5(a) provides that: "A person who causes bodily harm to or endangers the bodily safety of an individual by any means, commits reckless conduct if he performs recklessly the acts which cause harm or endanger safety, whether they otherwise are lawful or unlawful."

As Larsen was leaving the station, several Bartlett police officers began to argue with her. The officers transported Larsen to Sherman Hospital in Elgin, where she was involuntarily admitted into the psychiatric ward. Doctors at Sherman Hospital released Larsen several hours later. On March 16, 1997, Larsen was charged with reckless conduct under 720 ILCS 5/12-21.6, based on her alleged endangerment of her unborn child due to ingestion of an excessive amount of alcohol.[FN2] In June of 1997, all of the charges against Larsen were dismissed.

> FN2. 720 ILCS 5/12-21.6 provides that: "It is unlawful for any person to willfully cause or permit the life or health of a child under the age of 18 to be endangered or to willfully cause or permit a child to be placed in circumstances that endanger the child's life or health."

## III. Discussion

### A. Physician-Patient Privilege (Count V)

735 ILCS § 5/8-802 codifies the physician-patient privilege in Illinois. The version of § 8-802 in effect on the date of the incident provided that, "[n]o physician, surgeon, psychologist, nurse, mental health worker, therapist, or other healing art practitioner (referred to in this Section as "healthcare practitioner") shall be permitted to disclose any information he or she may have acquired in attending any patient in a professional character." Otherwise privileged in-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

formation may be disclosed, however, in connection with "all actions brought against the patient ... wherein the patient's physical or mental condition is an issue." 735 ILCS § 5/8-802(4.1). It also may be disclosed to any department which has custody of the patient pursuant to a state statute. 735 ILCS § 5/8-802(8).

The Medical Center seeks dismissal of Count V, contending that the "actions where the patient's physical or mental condition is at issue" and "in custody pursuant to a state statute" exceptions to the physician-patient privilege apply. Specifically, it asserts that "actions," as the term is used in § 8-802(4.1), include preliminary proceedings and investigations. The Medical Center thus concludes that an "action" was pending against Larsen even though she had not been formally charged at the time the Medical Center released her test results. The Medical Center also contends that § 8-802 is inapplicable because Larsen was in custody pursuant to a state statute, which establishes an exception to the physician-patient privilege. 735 ILCS § 5/8-802(8). Alternatively, the Medical Center seeks dismissal of Count V, arguing that Larsen's claims against it cannot proceed without a certificate of merit under 735 ILCS § 5/2-622.

In response, Larsen argues that, regardless of the exceptions to § 8-802, the Medical Center could only disclose her test results in response to a subpoena. Second, she contends that the exception for cases where a patient's physical or mental condition is an issue, § 8-802(4.1), is inapplicable because: (1) no legal action was pending against her at the time the Medical Center disclosed her test results because the proceedings against her were unlawful; and (2) the reckless conduct statutes under

which she was charged do not place her physical or mental condition at issue. Third, she contends that the exception allowing disclosure if the patient is in custody pursuant to a state statute, § 8-802(8), is inapplicable because it does not address the disclosure of privileged information in connection with criminal proceedings. Larsen thus concludes that criminal proceedings are outside the purview of § 8-802(8). Fourth, she argues that § 8-802(8) is inapplicable because the proceedings against her were unlawful. Finally, she asserts that no certificate under § 2-622 is necessary because she did not file a medical malpractice action.

**\*3** For the reasons discussed below, the court finds that healthcare providers do not necessarily need a subpoena to disclose information pursuant to an exception to § 8-802. The court also concludes that the Medical Center's conduct is shielded by § 8-802(8) and that it is, therefore, entitled to dismissal of Count V. Accordingly, the court will not discuss the parties' remaining arguments relating to Count V.

1. Disclosure Without a Subpoena

Larsen first contends that the Medical Center breached the patient-physician privilege because medical records must be produced only in response to a subpoena, citing *People v. Wilber,* 279 Ill.App.3d 462, 216 Ill.Dec. 74, 664 N.E.2d 711 (4th Dist.1996), and *People v. Nohren,* 283 Ill.App.3d 753, 219 Ill.Dec. 320, 670 N.E.2d 1208 (4th Dist.1996). In both *Wilber* and *Nohren,* the defendants were charged with driving under the influence of alcohol and given blood tests when they were transported to the hospital after an accident. Contrary to Larsen's suggestion, however, neither *Wilber* nor *Nohren* holds

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

that information subject to disclosure under an exception to § 8-802 can only be revealed in response to a subpoena. Indeed, in *Wilber,* the Illinois Appellate Court noted that statements made by paramedics at an accident scene could fall within the scope of § 8-802(4). *People v. Wilber,* 279 Ill.App.3d at 78-79, 664 N.E.2d at 715-16, *citing People v. Krause,* 273 Ill.App.3d 59, 63, 209 Ill.Dec. 566, 651 N.E.2d 744, 746 (3d Dist.1995). Such statements obviously could not have been made in response to a subpoena. Thus, the cases cited by Larsen at best support a distinction between medical records, which must be produced in response to a subpoena, and information about a patient's consumption of alcohol, which may be expressed orally to police without a subpoena.

The court also notes that the exceptions to § 8-802 do not limit the method by which medical information may be disclosed. The court declines to read a limitation into a state statute which is inconsistent with not only the plain language of the statute but also with the cases interpreting that statute.

To sum up, because the authority provided by Larsen in inapposite and it does not appear that § 8-802 requires that medical information may only be disclosed pursuant to a subpoena, the court declines Larsen's invitation to read such a limitation into the statute. The court thus turns to whether any exceptions to § 8-802 authorized the disclosure of Larsen's test results to the Bartlett police officers.

2. § 5/8-802(8)-Was Larsen in Custody Pursuant to a State Statute?

As noted above, § 8-802(8) permits disclosure of otherwise privileged information: (1) to any department, agency, institution, or facility; (2) which has custody of the patient; (3) pursuant to state statute. Larsen contends that § 8-802(8) does not apply to the disclosure of privileged information in criminal proceedings. The court disagrees for two reasons. First, Larsen has failed to cite to any authority supporting her limited reading of § 8-802(8). Second, Larsen's reading of the statute is wholly unsupported by the statute itself, which does not limit the exception to civil proceedings. Indeed, an Illinois court has held, in a case involving a challenge to the disclosure of information under § 8-208(4) (the physical or mental condition exception) that "the exception must be construed as extending to 'all actions,' criminal, civil, or administrative. Had the legislature intended to restrict the exception only to civil actions, it could have drafted the exception more narrowly." *People v. Krause,* 273 Ill.App.3d at 62, 209 Ill.Dec. 566, 651 N.E.2d at 746.

**\*4** According, the court considers whether § 8-802(8) permitted the Medical Center employee to disclose Larsen's test result to the Bartlett police officers. It is undisputed that the Bartlett police officers are a "department" within the purview of § 8-802(8). It is also clear that Larsen was in police custody while at the Medical Center. On the night in question, a Bartlett police officer interrogated Larsen, took her into custody, and caused her to be transported to the Medical Center via ambulance. *See* Complaint at ¶ 16. The Medical Center tested Larsen's urine for alcohol. *Id .* at ¶ 18, 209 Ill.Dec. 566, 651 N.E.2d 744.[FN3] After Medical Center employee divulged the test results to the officers, the officers brought Larsen to the Bartlett Police Department, directed her through the formal booking process, and placed her in a cell. *Id.* The Bartlett police thus had custody of

Not Reported in F.Supp.2d, 1998 WL 684204 (N.D.Ill.)
**(Cite as: 1998 WL 684204 (N.D.Ill.))**

Larsen when the Medical Center disclosed the test results. *See* 725 ILCS 5/107-5(a) ("An arrest is made by an actual restraint of the person or by his submission to custody").

> FN3. Although the complaint does not allege that the Bartlett police officers ordered the test, such an inference is consistent with the complaint's allegations.

The final prong of § 8-802(8)-whether Larsen was in custody pursuant to a state statute-poses a more difficult question. Larsen's argument hinges on her repeated claims that she was not intoxicated and that the police lacked probable cause to arrest her.[FN4] Pointing to the fact that the Circuit Court dismissed the charges against her, Larsen concludes that her entire arrest was void and that she thus was not in custody pursuant to a state statute.

> FN4. Under Illinois law, probable cause exists if police have "reasonable grounds to believe that the person is committing or has committed an offense." 725 ILCS § 5/107-2(1)(c).

The court disagrees. If probable cause does not ultimately support an arrest, the arrest must be voided and any fruits of the wrongful arrest must be excluded. *See, e.g., People v. Griffin,* 178 Ill.2d 65, 75, 227 Ill.Dec. 338, 687 N.E.2d 820, 828 (Ill.1997), *cert. denied,* 524 U.S. 956, 118 S.Ct. 2376, 141 L.Ed.2d 743 (1998). The alleged absence of probable cause does not mean that, when the police had Larsen in custody, she was not actually in custody because her arrest was later adjudicated unlawful. This logic would satisfy Lewis Carroll but is not supported by actual logic or any authority cited by Larsen.[FN5]

> FN5. In fact, in light of Larsen's repeated contention that disclosure was improper because the charges against her were ultimately dismissed and her failure to point to any relevant authority, the only support for Larsen's position appears to be the well-known maxim that, "what I tell you three times is true." Lewis Carroll, *The Hunting of the Snark* (1876) (" 'Just the place for a Snark!' the Bellman cried, as he landed his crew with care; Supporting each man on the top of the tide, by a finger entwined in his hair. 'Just the place for a Snark!' I have said it twice; That alone should encourage the crew. "Just the place for a Snark!'-I have said it thrice; What I tell you three times is true").

In addition, Larsen's interpretation of § 8-802(8) would place an untenable burden upon physicians who provide medical care in proceedings involving alcohol or similar substances. If the exceptions to § 8-802 turned on the ultimate validity of an arrest, no person rendering medical care could ever divulge information pursuant to the exceptions to § 8-802 as to do so would lead to liability if the arrest was later invalidated. The court declines to place such a burden on health care providers. *See Haynes v. Alfred A. Knopf,* 8 F.3d 1222, 1234 (7th Cir.1993) ("And we have said before and will say again that plaintiffs who seek innovations in state law are ill advised to chose a federal court as their forum").

For these reasons, the court finds that § 8-802(8) authorized the disclosure of Larsen's tests results to the police. The Medical Centers's motion to dismiss Count V is, therefore, granted, and Count V is

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1998 WL 684204 (N.D.Ill.)
**(Cite as: 1998 WL 684204 (N.D.Ill.))**

dismissed with prejudice. In light of this ruling, the court will not address parties' arguments regarding §§ 8-802(4.1) or 2-622.

## B. Invasion of Privacy (Count VI)

**\*5** With respect to Count VI, the Medical Center asserts that Larsen has failed to state a claim based on the public disclosure of private facts because she has not alleged that the Medical Center disclosed her test results to the general public or individuals with whom she had a special relationship. Alternatively, it argues that the statements about Larsen's alcohol levels were absolutely privileged. In response, Larsen claims that disclosure to the police officers is sufficient because "[c]ommunicating embarrassing facts about an individual to a public who has no legitimate concern with that individual constitutes an invasion of privacy." (Response at 10).

Invasion of privacy claims fall into four categories: (1) unreasonable intrusions on the seclusion of another; (2) appropriation of another person's name or likeness; (3) public disclosure of facts; and (4) publicity which places another in a false light before the public. *Roehrborn v. Lambert,* 277 Ill.App.3d 181, 184, 213 Ill.Dec. 923, 660 N.E.2d 180, 182 (1st Dist.1995). Larsen's invasion of privacy claim appears to be based on public disclosure of facts. To state a cause of action for this tort under Illinois law, Larsen must plead that: "(1) publicity was given to the disclosure of private facts; (2) the facts were private, and not public, facts; ... (3) the matter which was made public was such as to be highly offensive to a reasonable person;" and (4) the matter publicized was not of legitimate public concern. *Miller v. Motorola, Inc.,* 202 Ill.App.3d 976, 979, 148 Ill.Dec. 303,

560 N.E.2d 900, 902 (1st Dist.1990).

Larsen's invasion of privacy claim falters on the first prong, as Larsen's claim that Medical Center personnel disclosed her test results to the Bartlett police officers does not mean that the personnel publicly disclosed private facts. Information is publicly disclosed if the defendant "communicat[es] the matter to the public at large or to so many persons that the matter must be regarded as one of general knowledge," *Roehrborn,* 277 Ill.App.3d at 184, 213 Ill.Dec. 923, 660 N.E.2d at 182, or the plaintiff has a special relationship with the public to whom the information is disclosed, such as "fellow employees, club members, church members, family or neighbors." *Miller,* 202 Ill.App.3d at 981, 148 Ill.Dec. 303, 560 N.E.2d at 903.

The court agrees with the Medical Center that Larsen's complaint is devoid of allegations supporting a claim that the test results were disclosed to the general public or people with whom she had a special relationship. First, Larsen's belief that disclosure of her test results was embarrassing and her claim that the police officers had no legitimate interest in this information (based on the fact that the charges were dropped) are irrelevant as they do not support an inference that the Medical Center disclosed the test results to the general public. Second, Larsen cannot claim that she had a special relationship with the officers as such an assertion would be wholly inconsistent with the allegations in her complaint. Larsen's invasion of privacy claim must, therefore, fail. Accordingly, Count VI is dismissed with prejudice.

## IV. Conclusion

**\*6** For the foregoing reasons, the Medical

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1998 WL 684204 (N.D.Ill.)
**(Cite as: 1998 WL 684204 (N.D.Ill.))**

Center's motion to dismiss [9-1] is granted
and Counts V and VI of Larsen's complaint
are dismissed with prejudice.

N.D.Ill.,1998.
Larsen v. Suburban Med. Center at Hoff-
man Estates, Inc.,
Not Reported in F.Supp.2d, 1998 WL
684204 (N.D.Ill.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

# CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of April, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:  Jamie Melissa Sheehan, Ass't State's Atty, 50 W Washington St, Room 500, Chicago, IL 60602, and Daniel Francis Gallagher, Esq., Querrey & Harrow, Ltd., 175 W Jackson Blvd, Ste 1600, Chicago, IL 60604-2827 , and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants:  none.

/s/ Kenneth N. Flaxman

_____
Kenneth N. Flaxman
ARDC Number 08830399
200 S Michigan Ave, Ste 1240
Chicago, IL 60604-2430
(312) 427-3200 (phone)
(312) 427-3930 (fax)
knf@kenlaw.com (email)