## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

Derrick Phipps, et al.,                )
                                       )
             Plaintiffs,               )        07 C 3889
                                       )
      vs.                              )        Honorable Judge
                                       )        Elaine Bucklo
Sheriff of Cook County and Cook County, )
                                       )        Magistrate Judge Cole
             Defendants.               )


## DEFENDANT COOK COUNTY'S AMENDED POSITION PAPER

Now Come DEFENDANT, COOK COUNTY, by and through its attorney, Cook County

State's Attorney Anita Alvarez, through her Assistants, and for their position paper, state as

follows.

The Court sought clarification on where potential class members were housed and the

dates during which potential class members were housed in each.   There are three locations

where potential class members were housed at the Cook County Jail between July 11, 2005 and

the present.   The RTU housed potential class members from July 11, 2005 until July 2008;

Cermak Infirmary has housed potential class members from July 11, 2005 to present; and

Division II, Dorms M and N from July 2008 to the present.

## PRISON LITIGATON REFORM ACT ("PLRA")

### PLRA applies to this case.

The PLRA applies to "civil actions" with respect to "prison conditions", which have been

defined to include any civil proceeding arising under Federal law with respect to the conditions

of confinement or the effects of actions by government officials on the lives of person confined in prison. THE PLRA contains certain requirement to the filing of suits by prisoners.

1) Exhaustion of administrative remedies 2) no claims for mental or emotional injury without showing prior physical injury and 3) attorney fees and are supported as follows;

1. Prisoners are required to exhaust all available administrative remedies if their claims involve "prison conditions." That phrase applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002).

2. An inmate who begins the grievance process but does not complete it is barred under the PLRA for failure to exhaust administrative remedies. *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002).

3. There are four named Plaintiffs, Phipps, Grant, Courtney and House.  Ken Courtney and James Grant are the only named plaintiffs that were incarcerated in the Cook County Jail at the time this action was commenced.

4. The Amended Complaint alleges Grant and Courtney filed grievances; however, they are unrelated to each claim in this matter.

5. The Cook County Department of Corrections ("CCDOC") has a grievance procedure 14.5.  A detainee wishing to file a grievance must fill out the Inmate Grievance Form. Within five days of receiving the grievance, the Correctional Rehabilitation Worker provides a written copy of the findings to the detainee. If the detainee wishes to appeal the grievance decision, the detainee has five days from receipt of the decision to appeal to the Administrator of Program Services. The Administrator of Program Services has ten

days to review the grievance appeal and to reply to the detainee.  All appeal decisions are final.

6.  The CCDOC grievance procedure also allows for a grievance form to be processed as a request at the behest of the detainee.  When processed as a request, an appeal of the response and /or action cannot be made.  If the detainee is not satisfied with the response to the request and or attempt to resolve the issue, the detainee may resubmit the concern and it will be processed as a grievance.

7.  Courtney filed a request for a shower chair on November 28, 2006.  A grievance processed as a request is not appealable. If the detainee is not satisfied with the response, the detainee may resubmit the concern to be processed as a grievance. Courtney never resubmitted his request as a grievance. Therefore only response received could not be appealed.  Nevertheless the grievance did not cover the claims in this case. Thus, no exhaustion of administrative remedy occurred with this request.

8.  Courtney's second filing, which was a grievance, was filed on December 11, 2007. But Plaintiffs had filed their Complaint six months earlier, on July 11, 2007. As the suit was commenced before Courtney filed his grievance, he cannot be said to have exhausted his administrative remedies. Therefore, PRLA applies. There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court. *Porter*, 534 U.S., at 524, 122 S. Ct. 983, 152 L. Ed. 2d 12 .  The Prison Litigation Reform Act of 1995 mandates early judicial screening of prisoner complaints and requires prisoners to exhaust prison grievance procedures *before* filing suit. *Jones v. Bock,* 549 U.S. 199, 211 (2007).

9. In *Truly v. Sheriff*, 2004 U.S. Dist. LEXIS 7112 (N.D. Ill. 2004) *aff'd*., 135 Fed. Appx. 869 (7th Cir. 2005). Plaintiff filed grievances and received responses to those grievances. However, the plaintiff failed to appeal those grievances, merely filing additional grievances. As CCDOC procedure mandated an appeal, the court found plaintiff failed to exhaust his administrative remedies. Id. at *9. See also *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001) (inmate who complied with administrative procedure but did not see the process to its end did not exhaust remedies). This Court should find similarly.

10. Timelines are unforgiving, and Plaintiffs cannot escape the reality that they began the suit before the grievance process ended.

11. Grant's grievance did not address each of the relevant issues alleged in the Amended Complaint and thus does not meet the PLRA requirement. The key is whether the prison officials have the opportunity resolve disputes internally which means that a grievance must address each claim in a class action. *Lewis v. Washington*, 265 F. Supp. 2d 939, 942 (N.D. Ill. 2003). Plaintiff's grievance unrelated to his allegations are determinative that plaintiff failed to exhaust his remedies. *Howell v. Hall*, 2006 U.S. Dist. LEXIS 60915 (D. Or. 2006) (plaintiff failed to exhaust his remedies because his grievance was unrelated to the complaint.).

## **Waiver**

This Court ruled that Defendants waived the affirmative defense of exhaustion as it applies to the PLRA.

1. This Court further allowed the waiver to apply to the entire class even though this case was certified under Rule 23(b)(3) not 23(b)(2).

2. Defendants did not waive their affirmative defense as it applies to the PLRA.

3. The Seventh Circuit has held that a delay in asserting an affirmative defense waives the defense **only if the plaintiff was harmed as a result**. [emphasis added] *Curtis v. Timberlake,* 436 F.3d 709, 711 (7th Cir. 2006), *Williams v. Lampe*, 399 F.3d 867, 870-71 (7th Cir. 2005)(per curiam); *Carter v. United States*, 333 F.3d 791, 796 (7th Cir. 2003).  Where the plaintiffs have an opportunity to respond to a late affirmative defense, they cannot establish prejudice merely by showing that the case has progressed significantly since the defendants answered their complaint as a bar to the affirmative defense. *Williams*, 333 F.3d at 871.

4. In this case, the Plaintiffs were not prejudiced; they were aware of the exhaustion issue even when they filed their complaint, and they confronted the defense in responding to the motion for summary judgment. Plaintiff has not alleged they were harmed and had the opportunity to do so by raising it in their response to Defendant's motion for summary wherein the affirmative defense of exhaustion had been raised. Accordingly, this Court did not make a determination that Plaintiff was harmed. Even if the Court refused to allow the Defendants to amend their affirmative defenses, the other substantive issued of PLRA still apply.

5. In the PLRA context, the purpose of affording prison officials an opportunity to address complaints internally is met when one plaintiff in a class action has exhausted his administrative remedies.  That has not been done in this matter.

### **Exhaustion and Class Actions.**

Unless each Plaintiff exhausted their administrative remedies, PLRA bars that individual Plaintiff's cause of action. In further support of this Defendants state as follows;

1. Some courts have held that vicarious exhaustion doctrine should apply only where a class has been certified under 23(b)(2).  See. e.g., *Hattie v. Hallock,* 8 F.Supp. 2d 685, 689 (N.D.Ohio 1998), amended, 16 F. Supp. 2d 834 (N.D. Ohio 1998) (acknowledging in dicta that "vicarious exhaustion" is available in class actions under Rule 23(b)(2)). Rule 23(b)(2) permits certification of class actions where the primary relief sought is equitable in nature.  *In re Allstate Insurance Co*., 400 F.3d 505 (7th Cir. 2005).

2. Unlike, *Hattie* the case at bar was certified under Rule 23(b)(3) which renders "vicarious exhaustion" inapplicable. The policy reason for its inapplicability to 23(b)(3) is there is no injunctive or equitable relief rather only monetary relief for each individual.  That is because the individual experiences, rather than the kinds of structural or systemic issues (inadequate policies) that are often raised in injunctive class litigation are absent here.

3. Although *Rahim* was a Rule 23(b)(3) class action the Court found that where the defendants waived the affirmative defense of "exhaustion" as to class members the same should apply to the absent class members. *Rahim* case is distinguishable from the case at bar.  *Rahim v. Sheahan*, No. 99 C 0395, 2001 WL 1263493 at *7-8 (N.D. Ill Oct. 19, 2001).

4. In the case at bar the Defendants did not file a motion to dismiss.  Rather, the Defendants raised for the first time the affirmative defense of exhaustion in their Motion for Summary Judgment.  The Seventh Circuit has held that a delay in asserting an affirmative defense waives the defense **only if the plaintiff was harmed** as a result. [emphasis added] *Curtis v. Timberlake,* 436 F.3d 709, 711 (7th Cir. 2006), *Williams v. Lampe*, 399 F.3d 867, 870-71 (7th Cir. 2005)(per curiam); *Carter v. United States*, 333 F.3d 791, 796 (7th Cir. 2003).  Where the plaintiffs have an opportunity to respond to a late affirmative

defense, they cannot establish prejudice merely by showing that the case has progressed significantly since the defendants answered their complaint as a bar to the affirmative defense. *Williams*, 333 F.3d at 871.

5.   In this case the Plaintiffs were not prejudiced; they were aware of the exhaustion issue even when they filed their complaint, and they filed a response to Defendant's motion for summary judgment. Therefore, they were not prejudiced.

6.   Further support that "vicarious exhaustion" is inapplicable to Rule 23(b)(3) class actions can be found in the case cited by this court in its Memorandum Opinion Order. (Docket No. 192) *Rahim v. Sheahan*, No. 99 C 0395, 2001 WL 1263493 at *7-8 (N.D. Ill Oct. 19, 2001)(holding that defendant's waiver of exhaustion with respect to named plaintiffs extended to absent class members).

7.   Additionally, as has been stated in open court Plaintiffs intended to bring separate suits for damages on behalf of each class member.  This would circumvent the exhaustion requirement merely because each person is a member of the class.  *Jones' El v. Berge*, 172 F.Supp. 2d at 1132; *Pozo v. Hompe*, 2003 WL 23185882 (W.D. Wis., Apr. 8, 2003), amendment denied, 2003 WL 23142268 (W.D. Wis., Apr. 17, 2003); *Piscitello v. Berge*, 2002 WL 32345410 at *2(W.D. Wis., Nov. 4, 2002), *aff'd,* 94 Fed.Appx. 350, 2004 WL 635263 (7th Cir. 2004).(It does not, however authorize prisoners to bring separate suits for damages without exhaustion merely because they are members of the class.) The Plaintiffs concession on this point means Plaintiff could seek to undermine content of PLRA via a class action.

## Physical Injury Requirement

The PLRA mandates that no federal civil action may be brought by a prisoner "for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Section 1997e(e) "limits the damages available to prisoners not only for constitutional torts, but for violations of federal statutes." *Koger v. Bryan*, 523 F.3d 789, 804 (7th Cir. 2008). This principle is reflected by *Cassidy v. Indiana Dep't. of Corr.*, 199 F.3d 376 (7th Cir. 2000). As stated supra class action does not allow prisoners to bring separate suits for damages without exhaustion merely because they are member of the class.  It is Defendants position that if each class member is allowed to bring forth a separate suit for damages than Defendants should be able to raise failure to exhaust administrative remedies and their failure to show a physical injury.

## Attorney's Fees

In any action brought by a prisoner who is confined to any jail, prison, or other correctional facility, in which attorney's fees are authorized under section 1988 of  42 U.S.C. §1997e(d) such fees shall not be awarded, except to the extent that the fee was directly and reasonably incurred in proving actual violation of the plaintiff's rights. Plaintiffs brought this case under the ADA, §504 of the Rehabilitation Act and §1983. The PLRA applies to "civil actions" with respect to prison conditions, which are defined to include any civil proceeding arising under Federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of person confined in prison. In support of Defendant's position that attorney's fees, as defined in PLRA apply to the case at bar Defendants state as follows;

1.  No award of attorney's fees in an action described in previous paragraph shall be based on an hourly rate greater than 150 percent of hourly rate established under section 3006A of Title 18, for payment of court-appointed counsel.

2.  Where prisoners prevailed on both ADA and § 1983 claims, and where the claims were "inextricably intertwined," half of counsel's time was compensated at PLRA rates and half at the market rates under the ADA fee provision.  Beckford v. Irvin, 60F. Supp.2d 85 (W.D.N.Y.). However the Seventh Circuit suggest otherwise that PLRA attorney fee limitations apply to ADA cases.   *Cassidy v. Indiana Dept. of Correction*, 199 F.3rd 374, 376-77 (7th Cir. 1999). Therefore, the attorney's fees in this case should be limited to the PLRA provisions.

## THE REHABILITATION ACT ("The Act")

Plaintiffs have filed suit under § 504 of the Rehabilitation Act of 1973. The Rehabilitation Act provides that a qualified disabled person shall not, because of a disability, "be excluded from the participation in, be denied the benefits of, or be subjected to discrimination <u>under any program or activity receiving Federal financial assistance</u>." (emphasis added) 29 U.S.C. § 794(a).

1.  There is no significant difference between the rights created by the ADA and the Act. *Zukle v. Regents of the University of California*, 166 F.3d 1041, 1045, n.11 (9th Cir. 1999).

2.  The sole difference between the Act and the ADA is that claims under the former require that the entity sued receive federal funding. *Washington v. Indiana High School Athletic Assoc.*, 181 F.3d 840, 845 (7th Cir. 1999).

3. A plaintiff seeking relief under the Act must bring forward affirmative evidence that the program or activity from which he was excluded "itself received or was directly benefitted by federal financial assistance." *Doyle v. Univ. of Ala.*, 680 F.2d 1323, 1327 (11th Cir. 1982).

4. Plaintiff's have not only not failed to allege that they were excluded from participation or were denied the benefits of a 'program or activity', but they have likewise failed to bring forward affirmative evidence that the specific 'program or activity' they allegedly were denied the benefits of received federal financial assistance.

5. Plaintiffs' have failed to bring forward any affirmative evidence that the Sheriff received any federal financial assistance for programs or services related to programs or activities from which they were allegedly discriminated against.

6. Plaintiff's are attempting to trigger the Rehabilitation Act's federal financial assistance requirement as to the County by offering evidence that the County receives federal funds for programs or activities related to the treatment of HIV/Aids or STD diagnosis or treatment.

7. Plaintiffs, however, have not raised any claims related to programs or activities related to the treatment of HIV/Aids or STD diagnosis or treatment.

8. The federal financial assistance must be received for the direct purpose of implementing, operating or otherwise asssisting the program or activity from which the plaintiff was barred or discriminated against.

9. Therefore, under the federal financial assistance requirements of the Rehabilitation Act, the Act does not apply to either the County

    i.  (by way of Cermak Health Services) or the Sheriff of Cook County ( by way of the RTU and Division II).


## THE ADA

There are two main titles within the ADA dealing with accessibility these are Title II and Title III.

## <u>TITLE III</u>

- Title III of the ADA prohibits discrimination in places of public accommodation against persons with disabilities. 42 USC § 12182(a)

1. Title III only applies to private entities. "Public entities are not subject to Title III of the ADA which covers only private entities." II-1.3000.

    a. (Examples of facilities owned by private entities which fall under Title III are hotels, restaurants, grocery stores…in other words, any building open to the public which is not owned by a public entity, i.e. the government).

    b. A jail does not constitute a place of "public accommodation." *See Edison v. Douberley*, 2008 U.S. Dist. LEXIS 68152 (M.D. Fl. 2008) (finding public accommodation under Title III to not include state prisons); *Morgan v. Mississippi*, 2008 U.S. Dist. LEXIS 74001 at *5-6 (S.D. Miss 2008)(same); *Brown v. King County*, 1998 U.S. Dist. LEXIS 20152 at *6 (W.D. Wash 1998)(county correctional facility is not a place of public accommodation).

2. Title III of the ADA mandates the removal of physical barriers.

3. Title III of the ADA is not applicable to either the Cook County Department of Corrections, or Cermak Health Services, as both are owned/operated by public entities and neither are places of public accommodation.

## **TITLE II**

Title II of the ADA provides that "no qualified individual with a disability" shall be denied access to "services, programs, or activities of a public entity." 42 U.S.C. § 12132.

1.  Both the Cook County Department of Corrections and Cermak Health Services are public entities.

2.  Title II applies to inmates in state and local prisons. *Pennsyvania Dep't. of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998).

3.  To establish a Title II violation, a plaintiff must show he (1) is a qualified individual with a disability; (2) was discriminated against with regard to a public entity's services; and (3) such discrimination was based on his disability. 42 U.S.C. § 12132.

4.  Title II only pertains to the accessibility of programs, services and activities it does not mandate barrier removal. 42 U.S.C. § 12132.

5.  The ADA does not explicitly define "services, programs, or activities." *Innovative Health Sys. v. City of White Plains*, 117 F.3d 37,44 (2d Cir. 1997).

6.  The Seventh Circuit addressed the question of what constitutes a 'program' or 'service' in *Crawford v. Indiana Dept. of Corrections*, 115 F. 3d 481 (7th Cir. 1997.) The court noted that "[i]ncarceration itself is hardly a "program" or "activity" to which a disabled person might wish access." *Id.* at 483.

7.   "Incarceration, which requires the provision of a place to sleep, is not a 'program' or 'activity.'" *Bryant v. Madigan*, 84 F. 3d 246, 248 (7th Cir. 1996).

8.  Sleeping in one's cell is not a 'program' or 'activity'" *Id.*

9.  Showering and defecating were deemed not to be 'programs' or 'activities'. *Evans v. Rozum*, 2008 U.S. Dist. LEXIS 95432 (W.D. Penn. 2008).

10. Denial of bowel program supplies, a brace and catheter "does not constitute a violation of Title II of the ADA as a matter of law." Id. at *29.

11. A prison educational program or use of the prison law library did constitute 'programs'. *Crawford v. Indiana Dept. of Corrections*, 115 F. 3d 481,483 (7th Cir. 1997.)

12. Plaintiffs have not alleged they were denied access to 'programs' or 'activities'.

13. Plaintiffs have alleged instead that they had trouble utilizing the provided toilets and showers.

14. Under Title II of the ADA, private plaintiffs are limited to injunctive relief and in the court's discretion, attorney's fees. 42 U.S.C. §12133.

15. Plaintiffs have not asked for injunctive relief, nor has there been any claim for attorney's fees.

16. Neither the ADA nor the Rehabilitation Act is designed to remedy omissions in medical treatment provided to prisoners. *Montez v. Owens*, 2007 U.S. Dist. LEXIS 38406, *10 (D. Col. 2007). In *Montez*, a plaintiff's need for various medical devices, among other things, could not support a disability discrimination claim. "Deliberate indifference to medical needs does not give rise to a claim under either because of his disability." Id. at *14.

17. Plaintiffs seek compensatory damages.

18. "Compensatory damages are not available under Title II [without] discriminatory intent." *Ferguson v. City of Phoenix*, 157 F.3d 668, 674 (9th Cir. 1998).

19. A plaintiff asserting a private cause of action for violations of the ADA can only recover compensatory damages upon showing intentional discrimination. *Delano-Pyle v. Victoria County*, 302 F.3d 567, 575 (5th Cir. 2002).

20. Proof of discriminatory intent is needed to recover under Title II. *Access Living of Metropolitan Chicago v. Chicago Transit Authority*, 201 WL 492473 (N.D. Ill. 2001).

21. Plaintiffs must allege they are "being excluded from participation in, being denied the benefits of, or being subjected to discrimination…solely because of [their] disability. *Dillery v. City of Sandusky*, 398 F. 3d 562, 567 (6th Cir. 2005).

22. Plaintiffs have not alleged that they were intentionally discriminated against due to their disabilities as required by the ADA.

23. The Seventh Circuit has established a three part test for determining whether intentional discrimination has occurred under the ADA. *Washington v. Indiana High School Athletic Ass'n, Inc*., 181 F.3d 840, 846 (7th Cir. 1999).  Discrimination under the ADA may be established by showing: 1) the defendant intentionally acted on the basis of the disability; 2) the defendant refused to provide a reasonable modification; and 3) the defendant's rule disproportionally impacts disabled people. Id. at 847.

24. When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if reasonably related to legitimate penological interests. *Turner v. Safley*, 482 U.S. 78, 89 (1987).

25. In *Baribeau v. City of Minneapolis*, 578 F.Supp.2d 1201 (D. Minn. 2008) an inmate sued under the ADA after officers confiscated his prosthetic leg. The Court found security justified the jail's action citing the "discretion of prison officials." Id. at 1222.

## APPLICABILITY OF THE ADA TO THE BUILDINGS AT THE COOK COUNTY DEPARTMENT OF CORRECTIONS

The Americans with Disabilities Act ("ADA") was enacted in 1992. The ADA recognizes three categories of buildings: newly constructed, existing facilities with new alterations, and existing facilities without any alterations.

1. A newly constructed building (built after 1991) is subject to the highest standard. It must be readily accessible to individuals with disabilities. "Each facility…for the use of a public entity shall be designed and constructed in such a manner that [it] is readily accessible to and usable by individuals with disabilities." 28 C.F.R. § 35.151.

2. Cermak Health Services, built after enactment of the ADA, is considered "newly constructed".

3. An intermediate standard is applied to buildings built prior to the ADA's enactment but which were renovated subsequent to its enactment. Ordinary repairs do not trigger the ADA's application. It must be a renovation of existing facilities.

4. Such a facility must, "to the maximum extent feasible, be altered in such a manner that the altered portion of the facility is readily accessible to and usable by individuals with disabilities." 28 C.F.R. § 35.151(b).

5. Division II was built prior to the ADA's enactment and a renovation of its facilities was undertaken in the summer of 2008.

6. Division II is, therefore, subject to this intermediate standard under the ADA.

7. The lowest compliance standard is for existing facilities which have not been altered in any way. Public entities falling in this category are not required to "modify each facility to provide for access by individuals with disabilities," but must operate all services such that an existing facility is "readily accessible to and usable by individuals with disabilities." C.F.R. § 35.151(a).

8. The important distinction is that accessibility of the facility is not what is at play under this compliance standard; rather it is accessibility of the entity's services.

9.  The RTU (Residential Treatment Unit) was built in 1984 and has never undergone any sort of alteration. Therefore, the lowest compliance standard applies to the RTU under the ADA.

10. All disabled detainees were transferred out of the RTU in July of 2008.

11. Potential class members were housed in the RTU from July 11, 2005 until July 2008.

12. Potential class members were housed in Cermak Infirmary from July 11, 2005 to present.

13. Potential class members were housed in Division 2 Dorms M and N from July 2008 to the present.

Respectfully Submitted,


Anita Alvarez
Cook County State's Attorney
By:/s/ Mary E. McClellan
   Mary E. McClellan and

By:/s/ Jamie M. Sheehan
   Jamie M. Sheehan

Mary E. McClellan
Jamie M. Sheehan
Assistant State's Attorney
50 W. Washington, Suite 500
Chicago, Illinois 60602
312-603-3774